UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN DEAN PARKS, | No. C-12-1352 EMC (pr) |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; AND DENYING PLAINTIFF'S MOTION FOR RECEIPT OF PAYMENT** |
| T. PETERSON and DENISE REYES, | |
| Defendants. | **(Docket Nos. 22, 29)** |

## I. INTRODUCTION

On March 16, 2012, Plaintiff Steven Dean Parks, an inmate incarcerated at San Quentin State Prison (SQSP), filed a *pro se* civil rights complaint under 42 U.S.C. § 1983 against Nurse T. Peterson and Dr. Denise Reyes. Doc. No. 1. On June 18, 2012, the Court issued an Order of Service, finding that Plaintiff stated a cognizable claim against Nurse Peterson and Dr. Reyes for deliberate indifference to Plaintiff's serious medical needs. Doc. No. 4. On January 25, 2013, Defendants filed a motion to dismiss based on Plaintiff's failure to exhaust administrative remedies. Doc. No. 22. Plaintiff has filed an opposition, Doc. No. 27, and Defendants have filed a reply, Doc. No. 28. Plaintiff also has filed a "motion for receipt for payment of prisoner's filing fee," Doc. No. 29, and a "request for judicial notice of PLRA payment for plaintiff's forma pauperis," which the Court construes as a motion regarding his trust account, Doc. No. 30.

For the reasons discussed below, the Court **GRANTS** Defendants' motion to dismiss for failure to exhaust administrative remedies and **DENIES** Plaintiff's motion for receipt of payment.

## II. STANDARD OF REVIEW

The Prison Litigation Reform Act of 1995 (PLRA) amended 42 U.S.C. § 1997e provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Although previously within the discretion of the district court, exhaustion in prisoner cases covered by § 1997e(a) is now mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The PLRA exhaustion requirement requires "proper exhaustion" of all available administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Moreover, those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Porter*, 534 U.S. at 524 (citation omitted). Even where the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. *Id.; Booth v. Churner*, 532 U.S. 731, 741 (2001). The obligation to exhaust persists as long as some remedy is available; when that is no longer the case, the prisoner need not further pursue the grievance. *Brown v. Valoff*, 422 F.3d 926, 934-35 (9th Cir. 2005). The PLRA does not require exhaustion when circumstances render administrative remedies "effectively unavailable." *Sapp v. Kimbrell*, 623 F.3d 813, 822 (9th Cir. 2010).

Nonexhaustion under § 1997e(a) is an affirmative defense, and is properly brought in an "unenumerated Rule 12(b) motion rather than [in] a motion for summary judgment." *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). In deciding a motion to dismiss for failure to exhaust administrative remedies under § 1997e(a), the court may look beyond the pleadings and decide disputed issues of fact. *Id.* at 1119-20. The particular process by which an inmate exhausts administrative remedies is governed by the prison's own grievance procedures. *Jones v. Bock*, 549 U.S. 199, 218 (2007). If the court concludes that the prisoner has not exhausted the prison's administrative process, the proper remedy is dismissal without prejudice. *Wyatt*, 315 F.3d at 1119-20.

///

///

///

## III. DISCUSSION

A. California Department of Corrections and Rehabilitation (CDCR) Procedures

The CDCR provides its inmates the right to appeal administratively "any policy, decision, action, condition or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety or welfare." Cal. Code Regs. (CCR) tit. 15, § 3084.1(a). In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels of appeal: (1) informal resolution, (2) formal written appeal on a CDC 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4) third level appeal to the Secretary of the CDCR. *Id.* § 3084.7; *Barry v. Ratelle*, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997). This satisfies the administrative remedies exhaustion requirement under § 1997e(a). *Id.* at 1237-38.

Inmate appeals related to health care issues are addressed in the Health Care Appeals Unit at each prison. Declaration of C. Harless, SQSP Health Care Appeals Coordinator (Harless Dec.) at ¶ 2. The appeals coordinator at the Health Care Appeals Office screens all health-related appeals to determine whether they comply with the procedural requirements. *Id.* at ¶ 3; CCR tit. 15, § 3084.5(b)(3). If an appeal complies with the procedural requirements, the appeals coordinator accepts it and assigns it for review. Harless Dec. at ¶ 3. If the appeal does not comply with procedural requirements, the appeals coordinator may reject or cancel the appeal. *Id.*; CCR tit. 15, § 3084.6(b). The appeals coordinator returns a rejected or cancelled appeal to the inmate with a statement of the reasons for the rejection and instructions for curing the defect or appealing the decision. Harless Dec. at ¶ 3; CCR tit. 15, § 3085.5(b)(3). The appeals coordinator may cancel an appeal if an inmate refuses to cooperate during an interview. Harless Dec. at ¶ 3; CCR tit. 15, § 3084.6(c)(8). Although a cancelled appeal may not be submitted for further review, the inmate may separately appeal the cancellation. Harless Dec. at ¶ 3; CCR tit. 15, § 3084.6(e). A cancelled appeal does not exhaust administrative remedies. *Id.* § 3084.1(b).

At least one face-to-face interview with the inmate is required at the first level of review. CCR tit. 15, § 3084.7(e). If the inmate refuses to be interviewed or to cooperate with the interviewer, the appeal may be cancelled. *Id.* 3084.6(c)(8).

B.      Plaintiff's Appeal

Mr. Harless, in his role as SQSP Health Care Appeals Coordinator, handled Plaintiff's appeal No. SQ HC 11036001, in which Plaintiff sought renewal of his lower-bunk bed chrono. Harless Dec. ¶ 4. On November 2, 2011, the Health Care Appeals Office received Plaintiff's appeal. *Id.* at ¶ 5. Mr. Harless screened the appeal and returned it to Plaintiff that same day because it did not appear that Plaintiff had raised the issue with a health care clinician, which is a prerequisite to filing an appeal. *Id.* On November 4, 2011, Plaintiff resubmitted the appeal to the appeals office with an explanation that a doctor had already denied his request for a lower-bunk bed chrono. *Id.* at ¶ 6. Mr. Harless then accepted the appeal and assigned it for review. *Id.*

On November 8, 2011, Nurse Peterson met with Plaintiff to discuss the appeal. *Id.* Nurse Peterson cancelled the appeal on the ground that Plaintiff refused to cooperate with her during the interview. *Id.* On November 9, 2011, Mr. Harless sent Plaintiff a letter notifying him that the appeal had been cancelled for failure to cooperate. *Id.,* Ex. A. The letter explained that the appeal could not be submitted for further review but, if Plaintiff disagreed with the reason for the cancellation, he could submit a separate appeal challenging that decision. *Id.*

On November 28, 2011, Plaintiff requested a second-level review of his appeal, stating that Nurse Peterson had been deliberately indifferent to his medical needs. *Id.* at ¶ 7. On the same day, Mr. Harless returned this appeal to Plaintiff with a letter explaining that he could not submit the appeal for further review because it had been cancelled. *Id.,* Ex. A. The letter also informed Plaintiff that if he disagreed with the cancellation decision, he could submit a separate appeal to the appeals office. *Id.*

Plaintiff then submitted the same appeal to the Office of Third Level Appeals – Health Care. *Id.* at ¶ 8. On February 9, 2012, the appeal was returned to Plaintiff because it had been cancelled at the first level for failure to cooperate. *Id.* This letter included a note at the bottom stating: "Once an appeal has been cancelled that appeal may not be resubmitted. However a separate appeal can be filed on the cancellation decision to the Chief at the Office of Third Level Appeals. When an appeal is cancelled, your administrative remedies have not been exhausted." *Id.*, Ex. A. Plaintiff never filed a separate appeal challenging the cancellation decision. *Id.* at ¶ 9.

4

1    In support of their motion to dismiss, Defendants submit the declaration of L.D. Zamora,
2 Chief of the Inmate Correspondence and Appeals Branch (ICAB). ICAB is part of the California
3 Correctional Health Care Services (CCHCS), which is the part of CDCR that is responsible for
4 providing medical, dental and mental health services to adult inmates. Declaration of L.D. Zamora
5 (Zamora Dec.) at ¶ 1. Mr. Zamora's duties include overseeing CDCR administrative appeals
6 regarding medical, dental and mental health issues. *Id.* at ¶ 2. First and second level health care
7 appeals are handled by staff located at the respective penal institutions and third level appeals are
8 handled by ICAB staff located at CCHCS headquarters. *Id.*

9    All levels of appeals received at ICAB are tracked through a computer database system
10 known as the Health Care Appeals and Risk Tracking System (HCARTS). *Id.* at ¶ 4. At the request
11 of the Attorney General's Office, Mr. Zamora reviewed the HCARTS records for Plaintiff. *Id.* at
12 ¶ 5. A review of Plaintiff's Health Care Services Appeals history shows that, in November 2011, he
13 submitted Appeal No. SQHC 1103600, requesting a lower-bunk chrono and that this appeal was
14 cancelled at the first level of review for failure to cooperate. *Id.* at ¶ 6, Ex. A. Plaintiff then
15 submitted the cancelled appeal at the second and third levels of review, both of which were rejected
16 because he did not separately appeal the cancellation decision. *Id.* at ¶ 6. Since the rejection of his
17 appeals, Plaintiff has submitted no other health care appeal seeking a lower-bunk chrono. *Id.*

18    The evidence submitted by Defendants satisfies their burden to establish that Plaintiff did not
19 exhaust his administrative remedies before filing this action. Thus, their motion to dismiss must be
20 granted unless Plaintiff submits evidence showing that he did, in fact, appeal the cancellation of his
21 appeal or file a new appeal seeking a lower-bunk bed chrono, which properly has been exhausted.

22    In his opposition to Defendants' motion to dismiss, Plaintiff proffers three arguments for
23 denying the motion. Plaintiff first argues that Defendants have not submitted evidence of his failure
24 to cooperate with Nurse Peterson. Whether Plaintiff failed to cooperate with Nurse Peterson would
25 have been addressed in an appeal of the cancellation of his original appeal, had Plaintiff filed such
26 an appeal. However, it is not relevant to whether Plaintiff exhausted his remedies regarding his
27 original appeal under the appropriate regulations. After Plaintiff's appeal was cancelled, prison
28 officials informed him of the proper procedure for dealing with such a situation. In three different

1  letters from prison officials, Plaintiff was notified that he must submit a separate grievance
2  challenging the cancellation of his appeal and that his continued submission of the cancelled appeal
3  would not exhaust his administrative remedies. Because Plaintiff did not follow these instructions,
4  he did not exhaust his administrative remedies.

5  Plaintiff next argues that exhaustion is excused because the cancellation of his appeal
6  demonstrates Defendants' intent to prolong the exhaustion of his administrative remedies and to
7  prolong his pain and suffering from lack of a lower-bunk bed. As discussed previously, inmates
8  must follow the procedures set forth in the California Code of Regulations to exhaust administrative
9  remedies. *Ngo*, 548 U.S. at 93. This obligation persists as long as some remedy is available; when
10 that is no longer the case, the prisoner need not further pursue the grievance. *Brown*, 422 F.3d at
11 934-35. Here, Plaintiff had administrative remedies available to him. He could have appealed the
12 cancellation of his appeal, or he could have filed a new appeal of the denial of a lower-bunk chrono.
13 The cancellation of his appeal did not prevent him from continuing the appeal process and, thus, did
14 not excuse him from exhausting these remedies.

15 Last, Plaintiff argues that he exhausted administrative remedies by submitting the cancelled
16 appeal to the third level of review. This argument is without merit. Plaintiff persisted in submitting
17 his cancelled appeal to the next two levels of review despite notifications of the proper procedure he
18 must follow. As discussed above, inmates must follow the procedures set forth in the regulations to
19 exhaust their administrative remedies. *See Ngo*, 548 U.S. at 90 (administrative exhaustion "means
20 using all steps that the agency holds out, and doing so *properly"*) (emphasis in original).

21 Because exhaustion of administrative remedies is required before a civil rights case may
22 proceed in federal court and because the evidence shows that Plaintiff failed to exhaust her
23 administrative remedies, Defendants' motion to dismiss based on lack of exhaustion is granted.
24 Dismissal is without prejudice to Plaintiff refiling his deliberate indifference claim against Nurse
25 Peterson and Dr. Reyes in a new action if he can show that he exhausted administrative remedies or
26 that he is excused from doing so.

27 ///
28 ///

6

C. Plaintiff's Motions

On April 18, 2013, Plaintiff filed a motion for receipt of payment of his filing fee. On May 6, 2013, Plaintiff filed a document entitled, "request for judicial notice of PLRA payment." This document appears to be a motion in which Plaintiff argues that, on January 4, 2013, the prison incorrectly deducted $20.00 from his prison trust account for partial payment of his filing fee, which is more than the twenty percent per month that is supposed to be deducted. Plaintiff points out that the prison also deducted from his trust account a partial payment of a restitution fine for a criminal case so that he was left with only $45.00 in his trust account. He requests that the Court order the CDCR to refrain from removing seventy-five percent of the money in his trust account. These motions are DENIED.

The instructions attached to the Order Granting Plaintiff's *in forma pauperis* application, Doc. No. 3, indicates that, "on a monthly basis, 20 percent of the preceding month's income credited to the prisoner's trust account should be deducted and forwarded to the court each time the amount in the account exceeds ten dollars ($10.00)." *See* Doc. No. 3. The trust account statement submitted by Plaintiff indicates that, on January 4, 2013, $100.00 was credited to his trust account. Twenty percent of $100 is $20.00. Thus, a $20.00 payment towards Plaintiff's filing fee was correct. The fact that a partial payment for Plaintiff's criminal restitution fine was also made from his trust account is not relevant to the computation of the filing fee payment.

Therefore, Plaintiff's request for an Order to the CDCR regarding how it manages Plaintiff's trust account is denied. Furthermore, Plaintiff's motion for receipt of payment is denied; the prison's trust account statement indicates the amounts deducted for payment of filing fees each month.

///
///
///
///
///
///

7

### IV. <u>CONCLUSION</u>

For the reasons discussed above, Defendants' motion to dismiss for failure to exhaust administrative remedies is granted. Plaintiff's claim against Nurse Peterson and Dr. Reyes is dismissed without prejudice to refiling in a new action if he can show that he has exhausted it or is excused from doing so.

Plaintiff's motions regarding his trust account fees are denied.

The Clerk of the Court shall terminate all pending motions, enter judgment and close the file. This order terminates Docket Nos. 22 and 29.

IT IS SO ORDERED.

Dated: July 22, 2013

_____
EDWARD M. CHEN
United States District Judge